Case No. 17-2412 Paula McDaniels v. Plymouth-Canton Community Schools Oral argument not to exceed 15 minutes per side Ms. Mahoney for the appellate Good morning, may it please the Court My name is Mary Mahoney and I represented Paula McDaniels in the lower court and here in this court I have reserved 5 minutes for my rebuttal Fine We're here today because Paula McDaniels worked for 17 years for the Plymouth-Canton Community School District before she hit her glass ceiling In 2013 she applied for a promotion 3 times on 3 separate occasions Each time a male candidate was selected and we contend that that selection was based on a discriminatory purpose and for discriminatory reasons This case in fact tests the reasoning of the employer and the proffered reasons that it gave to support the selection of these male candidates The trial court found that the plaintiff appellant had established a prima facie case That part is not in dispute in this case This is really a pretext analysis The trial court determined that the district's basis for selecting male candidates was not a mere pretext for discriminatory treatment as alleged by Paula McDaniels Paula appealed because we believe the trial court made certain factual determinations and applied law to those facts that was inconsistent with what the evidence actually showed in the trial court and on the record The trial court also declined to limit the authority of the school district to exercise its business discretion in a non-discriminatory fashion And that's the reason for the appeal The case of interest was Wren v. Gould It's a 6th Circuit case and the court determined under Wren v. Gould that the employer's business judgment should prevail over any other issues that arose in the promotional process We claimed error because the criteria used in the exercise of the business judgment we believe was discriminatory Did your client file a complaint with the EEOC with regard to all three positions or just one? She filed the complaint after the third opportunity and it was based on all three It was based on the pattern of selecting these male candidates over her Did she put that in her complaint that had to do with all three turn downs? I believe it was alleged in the complaint. That was not contested by the defendant in the underlying case In the EEOC complaint I think Judge Seiler is referring to In the EEOC complaint where the EEOC determined that there was cause to believe that the statute had been violated Yes, it covered all three of the promotional opportunities The other thing argued by the district was the honest belief doctrine The trial court found that the school district had an honest belief that the selected candidates were more qualified based on their discriminatory selection criteria What exactly was wrong with their criteria? As I understand it, one of the criteria was that the others had more experience on hand of doing the kinds of things that a supervisor would be required to do They only had more experience by virtue of experience that was unrelated to school district experience Paula McDaniels was hired by the school district when she was very young. She worked there for 18 years The plant engineer job description says you must take responsibility for the heating, HVAC, ventilation, all of those mechanical plumbing things That's all contained in the plant engineer job description In the AHM, the assistant head maintenance job description, it's indicated that that position must assist in those endeavors And the language is identical So during the period of time when they're AHM, which is also a supervisory role, they are assisting with maintaining the building in all of those same regards It's not that the plant engineer only can do those tasks. The AHM is expected to assist What goes to the point that you made, Your Honor, is that the criteria that was considered was outside experience in construction trades That's what these male candidates possessed that my client didn't possess I thought there was also the question about doing various complicated tasks within the school that the male candidates had done and that she had not done There was testimony that Michael Oakes, who was the third individual, had very extensive construction experience He had dug trenches and set footings and hung drywall and done all kinds of things in the construction trade, which of course my client had not The implication was that the school district wanted that kind of an experience in case the need came up And the analogy that they used was, of course, the CPR If you have a candidate who's only just taken a class versus somebody who's done CPR every day, then of course you're going to pick the CPR person And my point was that that suggests and I think necessitates that the position involve doing CPR every day And there was no evidence in this case that this position required these advanced construction skills The only testimony was that Michael Oakes was commended by his principal because he had retiled a bathroom And there's no evidence at all that Paula McDaniels couldn't have retiled a bathroom I know on those home improvement shows, that's the task that they always let the homeowners do because it's very simple So there was no evidence in this case that there was trenches to be dug or drywall to be hung or any of these advanced construction techniques That was just code for we want guys who know how to fix stuff and we don't think girls know how to fix stuff That's the gravamen of the complaint in this case, as it were So the evidence was lacking in respect to her not having the requisite qualifications under the actual job descriptions It was only by virtue of considering this other unrelated experience that the men then came out favorably We contend that that is discriminatory because it disadvantages female candidates who never had the opportunity to work in the construction trades Did the people who made the decision have any prior experience with those who were selected instead of your client? I believe at least two of the principals had worked with the selected candidate prior to selecting them for the position So they could see what he could do, I suppose, that's what they claim anyway They did have an opportunity to see what those candidates could do, they had no opportunity to see what Paula McDaniels could do They would have relied on Harry Lau, the overall director of the AHMs They would have relied on him to tell them whether or not she was qualified to maybe exceed the capabilities of the person that they were familiar with And of course he never advocated for her in that regard because he didn't know either In Mr. Wolf's case, he had worked extensively with Mr. Wolf He had not had that same opportunity to observe Ms. McDaniels Is that an improper factor to rely on your familiarity with one of the candidates and your knowledge that that candidate has done a good job in the job that he had? I would contend that it is where it has a discriminatory effect as it did in this case, Your Honor I would say that the Briggs v. U of D case really just has nothing to do with this because that was a case where it was two people of the same gender The male subordinate was upset with the female director because she had had a sexual relationship with somebody else And favored that person in advancing that person And I know that there's many cases where the genders may be reversed but that same type of thing happens where there's favoritism in the workplace So it's not inherently suspect when there's favoritism But I'm saying that when it has a discriminatory impact as it did in this case on three separate occasions That it's not permissible under Wren v. Gould Which specifically says so long as the motive is not discriminatory, the business judgment will prevail And that's my contention. I see I have very little time left so I will yield to counsel and reserve my time for rebuttal Thank you Good morning, Your Honors. My name is Kenneth Chappie. I'm here on behalf of the Plymouth-Canton Community School District We're asking that the court affirm the decision of the district court to dismiss the plaintiff's lawsuit As has been discussed, the reason why the school district had chosen the individuals for the plant engineering position that they did Is because these people had demonstrated during the course of their employment with the school district The ability to do the tasks that are required of the job Now, the plaintiff had just spoken a second ago that some of these tasks were indeed things that were done outside of the school Well, the things that the school district relied on was both their overall resume and witnessing the tasks performed in the school Harry Lau had testified about witnessing multiple complex things that Dan Wolfe had performed during the course of his duties with Plymouth-Canton schools Those things included changing out P-traps, changing slowing valves, changing out light ballasts, a whole number of things But the point is, those things were done while working in the school district before he was named a plant engineer And those are the types of tasks that he would be required to perform while a plant engineer Does the evidence indicate whether the plaintiff was given the opportunity to do those tasks? Yes, I believe it does, your honor What specifically do you rely on? Well, plaintiff cites to a long passage of testimony from Mike Hartline, his supervisor The supervisor says that he showed her how to do these tasks Now, mind you that Mike Hartline wasn't always her supervisor, they only worked together for a short period of time But he did show her how to do these things and his testimony was that she didn't do them She didn't show the initiative Now, that was the separating factor with these other candidates Harry Lau testified that he looked for curiosity and initiative And that's what Dan Wolfe showed, initiative He went out of his way and sought out this type of work That's the same thing that Jim Johnson testified to as well That while he was principal in the building, he noticed that Derrick LaWright had gone out of his way Asking people if he could do those types of tasks and actually did them Mr. Johnson also testified to a number of things that he saw Derrick LaWright perform during the course of his duties As an AHM that would ultimately be performed by a plant engineer Again, it was a long list of complicated things I know that your opponent's brief has a long excerpt of Hartline's deposition Suppose one got the sense from that deposition of Hartline That Hartline was stereotyping females as being afraid of various things And that it was heavily in his mind as to what he thought she could do or was willing to do How should we factor that in? I don't think it should be factored in, Your Honor Because Mike Hartline was not a decision maker for any of these jobs that were posted Doesn't it make the testimony that you just relied on suspect? If Hartline says she didn't do any of these things And then we have deposition things where he says I don't think she would get up there and do it anyway Why not? Because she would be scared to get up there What would she be scared about? To get electrocuted Did she express any fear of heights? No I mean, there's some really stereotypical views in his deposition I could see how that could be viewed that way, Your Honor But when looking at the overall context of that longer passage He still says he shows her how to change the light ballast So he is not actually saying I'm not going to show her because she is female He's showing her and she doesn't do it So I think the conclusion he's coming to He's not doing it because she may be afraid of the electricity I'm afraid of electricity I wouldn't do it either But the point of the matter is, Your Honor The decision makers had viewed the people that they chose Doing a lot of these tasks that were performed during the course of their duties at Plymouth Canton Schools Now, the plaintiff has suggested also that Michael Oakes The tiling and the drywalling that he did Wasn't done at the school It was done at the school And it wasn't drywalling It was wet plastering Which is far more complicated than drywalling Now, those are also tasks that he performed while at the school district  There's no evidence that the plaintiff had that kind of experience And she even concedes that on pages 21 and 22 of her brief Now, addressing the EEOC issue I'm not aware of any other charge other than The one identified at document 1822, page ID 267 And on that EEOC charge It is only related to the April 19, 2013 Employment decision related to the first plant engineer job at Gallimore That's the only one I'm aware of, Your Honors So, your position then is that the others were not exhausted? Correct, Your Honor Now, this case really boils down to whether an employer Can use their discretion to hire somebody for a position When they know that the person has the demonstrated skills to do the job They've actually witnessed the person The one great uncertainty when hiring somebody Is you really don't know if they can do the job So you go through an interview process Sometimes you put them through some tests You put them through some scenarios Do you know how to do this? Do you know how to do that? Just to find out if the person can do the job But in this case, we had three candidates That had actually shown, while working for the school district That they had the initiative and curiosity to do these jobs That they were able to change light ballasts And do the plumbing things that were necessary Derek Leright fixed the HVAC system at the elementary school That he worked at before being promoted to the plant engineer Ms. McDaniel says she attended most of the training sessions she was supposed to What about that? Yes, Your Honor Ms. McDaniel testifies that she did attend most of the training sessions About 14 years earlier Now these training sessions are half-day classes on these issues I don't think attending a half-day class 14 years earlier Is any substitute for actually demonstrating that you can do the job Now the whole point of that class is so that you can learn to do the job Now the school district did give her the opportunity to do that And she could take any of those classes that she wanted to To learn how to do this type of work That was through the district And I guess, Judge Moore, that answers your earlier question About Mike Hartline's testimony The district gave her the opportunity to learn that type of thing And she went to those classes 14 years earlier But, as I said, I don't think that that is any substitute for actually Showing that you can do the job Because the point of those classes is to be able to end up doing that kind of work Now another thing about those classes Ms. McDaniel did not complete them all She testified that her greatest threat to this job Was Jeff Maloney, a male candidate Because he had completed the courses Mr. Maloney didn't get the job either And if you look at our record, I think it's 18-9 I believe page ID 177 It indicates Jeff Collard also didn't complete Or he also did complete all of the courses No courses are noted to be missing He also did not receive the job So the classes Finishing the classes Plaintiff was not disadvantaged because she was a female It's just the classes were no substitute for demonstrated experience in this area As for seniority She's also made the argument that she had more seniority But Dan Wolfe, who received the Gallimore position Was hired 7 months before she was He had more seniority In fact, the most senior applicant was Mike Gagala He had been hired by the district 8 years before Paula McDaniels And a little more than 7 years before Dan Wolfe He didn't receive any of the jobs In connection with Wolfe I was concerned by the part of your brief That says that plaintiff claims that Wolfe was classified At a lower level than she was In the footnote there Well, you don't really cite where in plaintiff's brief she says that But I found it on page 7 of her brief Which I guess is where that's contended But then you say without citing to any record evidence She claims that he was classified at a lower level And that this is a citation-free statement But if you go look at page 7 It's not citation-free at all There's three citations So what am I missing? It looks like that's just a blatantly false statement In your brief, which troubled me Your Honor, it was an error on my part in proofreading Well, it doesn't look like a proofreading error Well, I don't know Your Honor, if you look at How you can call something citation-free When there's three citations Well, apparently mine was the citation-free part Your Honor, if I could point to She references an evaluation from 2006 That says that he is a custodian That's seven years before the application So it isn't citation-free I acknowledge that that was an incorrect statement on my part It also says there's an attendance record Representing that status as of April 2013 Confirming that it was custodian And when you go look It does And it's an accurate characterization of the record So she's citing the record Citing something in the record And your response is not to answer that But to say she doesn't have any support You know, that makes it hard for appellate judges To sort of parse out what's in the record When there's something like that I understand your... There's that kind of conflict And when I see that kind of conflict I go and see, well, one of them got it wrong Your Honor And is misleading us And it doesn't appear On this minor point It doesn't appear to be your point I would agree with the way that that's worded I've got that wrong What I would be relying on Would be document 18-9, page ID 177 That identifies Dan Wolfe As an Assistant Head Maintenance A Which is a high school level Looks like that's wrong, though That's the summary that was made As part of this determination, right? There's some sort of summary Of who has which qualifications As part of the process of determining Whom to hire, whom to promote Well, it's the summary of Who they're looking to promote Who they're looking to promote But if the underlying documents Suggest that the person was a custodian And the summary document says That he had a higher rank Which one would you believe? You would believe the underlying documents, wouldn't you? I mean, an evaluation is more likely To be a correct characterization Of your position, isn't it? Than a summary that goes to the decision makers? Well, I suppose that could be argued, Your Honor What's your answer to that? There's no answer in your brief Because you just refused to look at it Well, what's the answer? The answer to that, Your Honor Is that the decision makers Obviously believe that he was An Assistant Head Maintenance Worker At the high school Even if they got it wrong At least the decision makers thought That he had that higher level experience Correct, Your Honor And a lot of this is based Not on just the positions that they held But the demonstrated skills that they had And that is the determining factor That really led to These people receiving the positions That they had demonstrated The ability to do complex work During the course of their performance Of their duties at Plymouth County Schools So, hypothetically Suppose that There was Discriminatory animus Among the supervisors Of a plaintiff In terms of not giving her Opportunities to do the kind of work Should then the failure to have experience Be a factor that could be dispositive In the selection Without violating either Elliot Larson Or Title VII I think more facts would be necessary To answer that question, Your Honor And I say that because The school district Aside from what this Building level supervisor Had allowed or didn't allow her to do The school district did provide These training courses That she could go to They did allow There are other people Who just took the initiative To do the type of work And this supervisor in particular Did show her how to do Things like changing light ballasts So, I think that we just need more Information, Your Honor For the hypothetical I notice that I'm coming to The end of my argument Are there any questions? I think so Thank you Thank you, Your Honors Thank you for the opportunity To address you again Was Wolf a custodian only Or was he also an AHM? He was a custodian Because he never took the classes He never promoted Out of the custodian position And those records Not only establish it But Paul McDaniel Also testified to it Everybody that worked At the district Knew the situation with Wolf Was that I found it notable That Mr. Chappie Relied on curiosity As it was set forth By Mr. Lau When Dan Wolf Wasn't even curious enough To take the classes The classes incidentally Were something That was provided for Under the collective Bargaining agreement It specifically referenced That these are the things You must do In order to be considered For promotion So Wolf Wolf was Refresh my recollection Wolf was Somebody who The Decision maker knew And had worked with Yes So it was based on A personal relationship Yes With both Mr. Lau And with I believe That building principal And for that reason He was allowed To leap frog over Because they were Happy with his work And again What I'm saying Is that That specifically Denies opportunities To the women Who are out there Who are not being considered For their qualifications And the things That they have done Paula took every class Except for the heavy equipment class And there has been No question That she was qualified Except that Sometimes We hear the defendant Raising these Claims that Maybe she wasn't qualified Because There was no evidence From her supervisors That she got on the ladder To go change something In front of them But the reason That we know That she was That was their testimony That she would Whenever anything difficult Came up She would come and get Someone else to do it That was their testimony But I would point you Your honor To And that would be Concerning If I was In the shoes Of the employer Well so and so Took the courses Some people Had this rank Some people Had that rank But you got Some people Who would Affirmatively Go and fix things And other people Who are basically Clean up people When there's something That needs to be fixed Go and get somebody else That's kind of The impression I got from the briefs That's not accurate though No Judge Rogers It's not And what I would Point you to Is the Employment The personnel Evaluations That are attached And you can even Compare Paula McDaniel's Evaluations With I believe It was Mr. Leright's Evaluation His says something Like Always early Hers says Always goes above And beyond Does everything We ask her to do Sometimes there were Exclamation points About how happy They were with her Where is the Evidence That her Conduct Or her Skills were Found deficient In any way The hypothesis I was throwing out Was that she did a Great job at Clean up As most Women do She was supposed to do So you could be Very excited about that But not have confidence That they could Fix stuff I would argue Judge Rogers That that Represents Yet another One of those Stereotypical Things In the workplace Stereotypes But there is some Evidence that that's How they're reasoning Isn't there It's not So that would be Consistent I guess With the idea That they were Pleased with their Activities There's some evidence That that was Their mental process I don't believe It accurately Reflects the true State of affairs Paula Subordinate Came to my office And wrote An affidavit Indicating that She showed him How to do All these things And the other reason That we know That she's qualified This is Completely not in the record But We don't need Well don't Don't bring it up If it's not in the record I was just going to point out That she Applied for a job And was hired As a plant engineer About a month ago At the school district Your opponent Said that there's only One EEOC Filing On Page I.D. 267 And that it Refers only to One Promotion And looking at that Quickly here It seems that It does refer Only to a Promotion Denial On April 19th 2013 Is there something else That we should look at Either another EEOC filing Or Is there something That I'm missing in that Your honor I don't have those records In front of me I know that I didn't become Involved in this Until the mediation Session And at the mediation Session It was discussed That she had also Been denied Other promotions I remember that Being discussed And I don't remember Any objection being Raised as to The fact that It was not a part Of the charges This was a Continuing Violation I suppose As it were I'm out of time Which one Judge Moore Is referring to Is that correct Which one of the Three I see the April 2013 I believe Would have been The very last One Last one Yes The contention Of your appointment Is that you've only Exhausted with The last one Is that the argument Yes I think That the evidence In this case Fairly encompasses A continuing Violation Because all Three were Leading up to The same thing Is that she Kept applying And kept Getting Turned down In favor of In other words The previous Turndowns Were evidence That bolstered The fact that There was discrimination With respect to The last one Correct your honor Really what we Should be focusing On is the last one And whether these Other things Say something To get us To a jury With respect to The last one Yes your honor I'm just trying to Understand what's being Argued Yes Thank you Thank you very much Your red light is on So we appreciate Your argument Thank you The argument of both Of you and the case Will be submitted Would the clerk Call the next case Please